UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KATHERINE BORDEAUX,<br><br>Defendant. | 5:21-CR-50046-JLV-03<br><br>REPORT AND RECOMMENDATION |

Pending is Defendant's Motion to Suppress (Doc. 29). A hearing was held on Wednesday, May 5, 2021. Defendant was personally present and represented by her attorney of record, Terry Pechota. The Government was represented by the Assistant United States Attorney Megan Poppen. One witnesses testified at the hearing, and one exhibits were received into evidence. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

### RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be denied.

### JURISDICTION

Defendant is charged in an Indictment with Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349, ten counts of Bank Fraud in violation of 18 U.S.C. § 1344(2), and two counts of Theft, Possession, or Receipt of Stolen

1

Mail in violation of 18 U.S.C. § 1708. The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and United States District Judge Jeffrey L. Viken's Standing Order dated April 1, 2018.

## FACTUAL BACKGROUND

On May 20, 2020, Dakotah Steakhouse received a call from an unknown male inquiring about the balance of a gift card the restaurant knew to be stolen. Instead of telling the male it was stolen, the employee made up an amount and allowed the male to make a reservation. The manager then called Detective Anthony Meirose with the Rapid City Police Department to have him arrive at the restaurant the same time as the reservation.

Around 5:30 p.m., Dominic Kennedy and Angela Kennedy arrived at the restaurant with the stolen gift cards. Upon their arrival, Detective Meirose interviewed Dominic while Angela was present. During the interview, Angela stated she received the gift cards from a man named Nick and another woman who were already seated inside.[1] At the conclusion of the interview, Dominic was arrested and Angela was allowed to continue into the restaurant. Dominic was loaded into a police cruiser to be transported to the Pennington County Jail. Detective Meirose got into his own, unmarked police cruiser and began following the transport vehicle. Not long into the drive, he received another call from Dakotah Steakhouse requesting he come back to the restaurant, as Angela, Nick, and Katherine were now unable to pay for their food.

---

[1] The woman turned out to be the defendant, Katherine Bordeaux.

As Detective Meirose walked up to the front doors of the restaurant with the stolen gift cards in hand, he was approached by the defendant, who stated that the cards were hers. He then asked her to help clear up the situation, and she agreed to talk with him. The two separated themselves from the restaurant and the interview began in front of Detective Meirose's unmarked police cruiser. For about 10 minutes, the interview continued outside. At this point, Detective Meirose asked the defendant if she would sit in the front seat of his cruiser. She agreed and let herself into the front passenger seat of the vehicle.

The defendant was interviewed for approximately 45 minutes, during which she made several incriminating statements.

## **DISCUSSION**

The defendant argues her statements to Detective Meirose made on May 20, 2020 should be suppressed for two reasons.[2] First, the defendant argues she was not advised of her <u>Miranda</u> rights and did not waive said rights. (Doc. 290). Second, she argues any statements she made were involuntary because she was under the influence of drugs or alcohol at the time she made the statements. <u>Id</u>.

The Government responds that the defendant was not in custody at the time of her questioning, so <u>Miranda</u> warnings were not required. (Doc. 32). They also argue the statements made by the defendant were voluntary due to

---

[2] Counsel for the defendant also raised an argument at the hearing on this motion that anything discovered during the search of the defendant's purse should also be suppressed. The Government responded that they will not introduce into evidence anything found during the search, so the argument will be denied as moot.

the defendant's age, experience with law enforcement, and intelligence and because there existed no coercive police activity.  Id.

### 1. The defendant was not in custody for purposes of Miranda.

The issue is whether the defendant was "in custody" for purposes of Miranda.  An individual is entitled to an advisement of Miranda when that individual is "taken into custody for questioning." United States v. Axsom, 289 F.3d 496, 500 (8th. Cir. 2002) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)).  Miranda requires that the individual be advised of "his right to be free from compulsory self-incrimination and his right to assistance of counsel."  Id.

A suspect is in custody when he is "deprived of his freedom of action in any significant manner." Axsom, 289 F.3d at 500 (citing United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990)).  A court considers the totality of the circumstances in deciding whether "a reasonable person in the suspect's position would have understood his situation to be one of custody." United States v. Anaya, 715 F.Supp.2d 916, 928 (D.S.D. 2010).  The determination of whether a subject is in custody considers both "the presence and extent of physical and psychological restraints placed upon the person's liberty during the interrogation." Axsom, 289 F.3d at 500.

To determine whether an interrogation occurs in custody, the court must inquire "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995).  The test focuses on how a "reasonable

person in the subject's situation would perceive [her] circumstances." Yarborough v. Alvarado, 541 U.S. 652, 662 (2004). Moreover, the "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 323 (1994). Thus, "the only relevant inquiry" is whether a reasonable person in Ms. Bordeaux's position "would have felt at liberty to end the interrogation and leave." United States v. Brave Heart, 397 F.3d 1035, 1038–39 (8th Cir. 2005).

In United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990), the Eighth Circuit identified six factors to consider in determining whether an individual is in custody for the purposes of Miranda:

> 1) whether the suspect was informed that he or she was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong-arm tactics or strategies were employed; (5) whether the atmosphere was police-dominated; or, (6) whether the suspect was placed under arrest at the end of questioning.

Id. "These factors are not exclusive; custody 'cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly.'" United States v. Elzahabi, 557 F.3d 879, 883 (8th Cir. 2009) (quoting United States v. Czichray, 378 F.3d 822, 827–28 (8th Cir. 2004)). The "most obvious and effective means of demonstrating that a suspect has not been taken into custody" is an express advisement that the suspect is not under arrest and that her participation in questioning is voluntary. Brave

5

Heart, 397 F.3d at 1039 (quoting Griffin, 922 F.2d at 1349). "[N]o governing precedent of the Supreme Court or this court has yet held that a person was in custody after being clearly advised of her freedom to leave or terminate questioning." United States v. Henry, 3:15-CR-30119-RAL, 2016 WL 3339238, at *5 (D.S.D. June 13, 2016) (quoting Brave Heart, 397 F.3d at 1039).

      Here, it is clear the defendant was not in custody at the time she was questioned by Detective Meirose. First, and perhaps most importantly, the defendant was expressly advised that she was not under arrest and that she did not have to speak with Detective Meirose. Specifically, Detective Meirose told the defendant "I just want to tell you again, you don't have to talk to me, you're not going to go to jail, but I would just like to hear your side of the story." (Ex. 1 at 6:03). Additionally, the defendant was not arrested at the conclusion of the interview.

      The defendant was also mostly free to move around as she pleased for the entirety of the interview. The interview began outside Detective Meirose's unmarked police vehicle, at which time the defendant's movements were wholly unrestricted. Around 10 minutes into the recorded portion of the interview, Detective Meirose asks the defendant "If you're still going to talk to me, do you mind just having a seat in the front passenger seat…?". Id. at 9:46. She agreed and let herself into the vehicle. The remaining 35 minutes of the interview occurred in the police vehicle. While the defendant's freedom of movement was slightly impeded by nature of being in a police vehicle, she still possessed an overall high degree of freedom of movement.

The defendant also initiated the contact with Detective Meirose. Detective Meirose testified that as he approached Dakotah Steakhouse with the gift cards in hand, the defendant approached him and stated, "Those are mine." The interview proceeded from there. There were also no strong-arm tactics or strategies employed during the course of the interview. Detective Meirose spoke in a calm and non-confrontational tone for the majority of the interview. Although there were a couple times during the interview when Detective Meirose spoke up to confront the defendant with information contrary to what she was telling him, he remained calm and did not issue any threats or promises.

Lastly, the area was not police-dominated. The interview took place in the parking lot of the Dakotah Steakhouse and in the front seat of Detective Meirose's police vehicle. At the time of the interview, that was the only police vehicle in the parking lot.

Upon consideration of the factors outlined in <u>Griffin</u>, the court finds that the defendant was not in custody at the time of her questioning and an advisement of <u>Miranda</u> was not required. Additionally, because the defendant was not entitled to a recitation of her <u>Miranda</u> rights, it matters not whether she waived those rights.

**2. The defendant's statements were voluntary.**

The burden of demonstrating that a defendant's statement was voluntary rests with the government, which must prove voluntariness by at least a preponderance of the evidence. <u>United States v. LeBrun</u>, 363 F.3d 715, 724

7

(8th Cir. 2004). Due process requires that confessions be voluntary. See Brown v. Mississippi, 297 U.S. 278, 285–86 (1936); see also Schneckloth v. Bustamonte, 412 U.S. 218, 225–26 (1973) (explaining that voluntary confession may be used against defendant while the use of involuntary confession offends due process). "The appropriate test for determining the voluntariness of a confession is 'whether … pressures exerted upon the suspect have overborne his will.'" United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir.1990) (quoting United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir.1989)).

Statements are involuntary if they are "extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." LeBrun, 363 F.3d at 724 (citing Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001)). "A statement is voluntary if it is the product of an essentially free and unconstrained choice by its maker." United States v. Anaya, 715 F.Supp.2d 916, 931 (8th Cir. 2010) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973)).

When assessing whether the defendant's will was overborne, the court considers "the conduct of the officers and the characteristics of the accused." LeBrun, 363 F.3d at 724. Relevant factors include the defendant's prior experience with law enforcement; the nature of the interrogation, including its duration and location; whether the defendant was in custody or otherwise restrained; whether law enforcement employed hostile tactics; and defendant's

8

intelligence and mental state. See, e.g., id. at 726; United States v. Turner, 157 F.3d 552, 555–56 (8th Cir. 1998).

Low intelligence or impaired mental functioning are not determinative of voluntariness without some evidence of coercive police activity. Colorado v. Connelly, 479 U.S. 157, 165 (1986) ("A statement rendered by [a mentally incompetent individual] might be proved to be quite unreliable, but this is a matter to be governed by the evidentiary laws of the forum . . . and not by the Due Process Clause[.]"); Turner, 157 F.3d at 555 (finding confession voluntary where defendant "was clearly intelligent to understand his rights" even though he was intoxicated with PCP at time of confession and his IQ was in "low average to borderline range"). The voluntariness of a statement is judged by the totality of the circumstances. Anaya, 715 F.Supp.2d at 932.

Here, the defendant argues her statements were involuntary due to the fact that she was under the influence of drugs or alcohol at the time she made the statements. The defendant introduces no evidence in her memorandum in support of this contention. Additionally, counsel for the defendant did not ask Detective Meirose any questions regarding whether the defendant appeared under the influence of drugs or alcohol at the time of the questioning and has otherwise failed to provide any evidence that she was under the influence of any substance at the time of questioning.

The court, having listened to the audio recording of the interview, finds that the defendant was coherent and understood what was being asked of her. Additionally, as stated above, even if the defendant was under the influence at

the time of questioning, this fact alone will not render a statement involuntary. There must be also some coercive police activity "sufficient to overcome a defendant's will." LeBrun, 363 F.3d at 724 (citing Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001)). Although Detective Meirose rose his voice to confront the defendant with evidence against her, he remained calm and collected throughout the interview. He did not threaten or promise her anything, and did not employ any hostile or coercive tactics.

Additionally, the defendant is 50 years old and of at least average intelligence. She is a high school graduate and attended some college at both San Francisco State University and Oglala Lakota College. (Doc. 26). She communicated well with Detective Meirose and was clearly able to track the conversation. Lastly, the defendant appears to have a fairly extensive criminal history and a relatively thorough familiarity with the justice system. As such, both the conduct of the officer and the characteristics of the defendant point towards the conclusion that the defendant's statements were voluntary.

Therefore, the court finds that the government has met its burden of showing the defendant's statements were made voluntarily.

## **CONCLUSION**

For the aforementioned reasons, it is respectfully

RECOMMENDED that Defendant's Motion to Suppress (Doc. 29) be denied.

**NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 9th day of July, 2021.

BY THE COURT:

/s/ Daneta Wollmann
DANETA WOLLMANN
United States Magistrate Judge